**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MARK MURPHY and MARIA
MURPHY, as guardians of OLIVIA
MURPHY, et al.,

      Plaintiffs,

v.                                                            Case No. 8:25-cv-22-TPB-TGW

VILLAGES AT NOAH'S LANDING LTD,
et al.,

      Defendants.
_____/

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

This matter is before the Court on the following motions: "Defendant, Constance Bamberg's Motion to Dismiss First Amended Complaint" (Doc. 25), "Defendant, Noah's Ark of Central Florida, Inc., d/b/a ROAR Florida's Motion to Dismiss First Amended Complaint" (Doc. 26), "Defendant, Villages at Noah's Landing, LTD.'s Motion to Dismiss First Amended Complaint" (Doc. 27), filed February 24, 2025, and "Defendant Royal American Management, Inc.'s Motion to Dismiss First Amended Class Action Complaint" (Doc. 29), filed on March 3, 2025. Plaintiffs filed their "Omnibus Response to Defendants' Motion to Dismiss Amended Class Action Complaint" (Doc. 34) on Mar. 25, 2025.

Upon review of the motions, the response, the court file and the record, the Court finds as follows:

## Background

This case is a putative class action brought by parents on behalf of their adult children who reside at the Villages at Noah's Landing (the "Villages"), a residential community for adults with developmental and intellectual disabilities. The Villages was developed by and is owned by Defendant Villages at Noah's Landing, Ltd. ("VANL"), a limited partnership. VANL's general partner is The Villages at Noah's Landing Members LLC, of which the sole officer is Defendant Noah's Ark of Central Florida, Inc., d/b/a ROAR Florida ("ROAR"). Defendant Constance Bamberg is the president of ROAR. Defendant Royal American Management operates the Villages along with ROAR.[1] VANL's sole limited partner is Regions Bank, with a 99.99% ownership interest.

Plaintiffs allege that the Villages was represented as a safe, supportive environment with adequate services and opportunities for socialization, but that instead, the Villages unlawfully charges them for inadequate services and maintains an environment that "victimizes" the residents rather than supporting them. Plaintiffs allege, among other things, that the Villages unlawfully excludes non-disabled or "neurotypical" individuals from residing at the Villages, thereby depriving residents of opportunities for socialization. The Villages imposes rules and regulations that residents cannot comply with due to their disabilities, and instead of

---

[1] Plaintiffs also named Atala Consulting, Inc., as a Defendant on Counts I through V of the amended complaint. Atala also moved to dismiss. However, on August 18, 2025, Atala filed a suggestion of bankruptcy. By separate order, this Court has stayed all proceedings as to Atala and will not address Atala's motion to dismiss in this Order.

accommodating their disabilities, the Villages imposes a policy of "zero tolerance," threatening residents with eviction for rule violations.

Based on these and other allegations, Plaintiffs' first amended complaint (the "complaint") asserts violations of the Fair Housing Act ("FHA") against all Defendants (Counts I through V), violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against VANL, ROAR, and Royal American (Count VI), breach of contract against VANL (Count VII), fraud against VANL, ROAR, and Royal American (Count VIII), and unjust enrichment against VANL (Count IX). Plaintiffs seek declaratory and injunctive relief and damages.

Defendants have filed motions to dismiss the complaint on various grounds discussed below.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in

the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

### *Shotgun Pleading*

Defendants argue that Counts I through V of the complaint involve impermissible shotgun pleading. A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading." *See Anderson v. Dist. Bd. Of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit has identified four primary types of shotgun pleadings:

(1)    complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;

(2)    complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;

(3)    complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and

(4)    complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

*See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Defendants argue that Counts I through V constitute shotgun pleadings in two respects. First, and principally, Defendants argue that these counts allege that all Defendants collectively have taken certain actions, without attributing the actions to individual Defendants. Referring to multiple defendants collectively can violate the shotgun pleading rule when it is impossible for each defendant to determine which acts or omissions that defendant is charged with. However, where a complaint can fairly be read as asserting that each defendant engaged in the conduct alleged, group pleading does not violate the shotgun pleading rule. *See Ray v. Foltz*, 370 F.3d 1079, 1083 n.2 (11th Cir. 2004) ("As we have previously said, '[t]he fact that defendants are accused collectively does not render the complaint deficient' where '[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.'") (quoting *Kyle v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)).

The complaint's references to "Defendants" in Counts I through V do not violate the shotgun pleading rule.[2] The alleged acts and omissions all relate to the operation and management of the Villages – how the community advertised for tenants, provided or failed to provide services, charged fees, and enacted and enforced rules for the tenants. Plaintiffs expressly allege that each of the Defendants was involved in these matters, specifically that "[e]ach of the defendants, through their officers, agents

---

[2] The Court addresses the group pleading issue as to Count VIII, a claim for fraud subject to the particularity requirement of Fed. R. Civ. P. 9(b), in a separate discussion below.

and employees, were substantially involved in the operation of the Villages, including promulgation, enforcement and maintenance of the discriminatory practices and rules which form the basis of claims asserted herein."

The complaint also explains the relationship of the Defendants to each other in a way that renders plausible the allegation that each Defendant was responsible for the conduct complained of. ROAR is the primary operator of the Villages. Defendant Bamberg is President and CEO of ROAR. Bamberg is alleged to have personally enforced or overseen the enforcement of the operations of the Villages and its rules. ROAR, in turn, is the "officer" of non-party Villages at Noah's Landing, LLC, which is the general partner of VANL. It therefore appears likely that ROAR's actions would be imputed to VANL. Finally, the complaint alleges that Royal American, a property management company, assisted ROAR in applying for funding and in the operation of the community. These allegations sufficiently inform each Defendant of its role in a way that allows each Defendant to admit or deny the allegations of fact and assess the basis of liability asserted against it.

A second shotgun issue, however, is more problematic and pervades the complaint. As Defendants note, the complaint contains 158 paragraphs of general allegations and every one of these paragraphs is incorporated by reference into every count of the complaint, even though many of the incorporated allegations have no apparent connection to the claims asserted. Count I, for example, asserts a claim that Defendants do not allow "neurotypicals" or non-mentally disabled individuals to be residents, in violation of § 3604(f)(1) of the FHA. But the general allegations incorporated by reference go back to 1996 and describe ROAR's involvement in

projects other than the Villages, its legislative advocacy efforts, its efforts to obtain funding, agreements to provide various services, and complaints about the services provided and charges imposed.  There is no apparent connection to the claim asserted in this count, which is based on excluding non-disabled individuals.[3]  Counts II through V suffer from the same defect.  Count V is particularly problematic, as it alleges a violation of § 3604(f)(2) of the FHA, but the factual basis for the claims is alleged to be "the foregoing conduct of Defendants," referring to all 158 incorporated paragraphs.

This type of over-incorporation constitutes an impermissible shotgun pleading.  *See, e.g., Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).  It presents that same problem exemplified in *Weiland*'s four examples – failing to give the defendant fair notice of the factual basis of each claim.  *See Harris v. Pub. Health Tr. Of Miami-Dade Cty.*, No. 1:19-cv-25298-KMM, 2020 WL 1933169, at *3-4 (S.D. Fla. Apr. 14, 2020).  This type of pleading improperly requires the Court and Defendants to "sift through the facts presented to determine which allegations are relevant to a particular claim."  *Id.* at *4.

Defendants' motion to dismiss the first amended complaint is therefore granted on this ground.   Plaintiffs may amend the complaint to try to cure this deficiency.  In any repleading, Plaintiffs should strive to ensure that each count asserts a separate claim for relief and gives Defendants fair notice as to the specific legal theory asserted

---

[3] Count I itself also contains express allegations relating to the current operation of the Villages having no connection or at best a tangential connection to the specific FHA claim Plaintiffs appear to be alleging in this Count.

in that count and as to which facts – whether set forth in the count or incorporated by reference – Plaintiffs rely on with respect to relief under that theory.

The Court will now address Defendants' arguments as to other alleged deficiencies in the claims alleged.

### Count I – Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)

Count I asserts that Defendants have excluded from the community neurotypicals (that is, persons who are not cognitively or developmentally disabled) in violation of the FHA. Section 3604(f)(1) makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer of renter because of a handicap of (A) that buyer or renter or (B) a person residing in or intending to reside in the dwelling after it is so sold, rented, or made available, or (C) any person associated with the buyer or renter." 42 U.S.C. § 3604(f)(1).

Defendants move to dismiss this count on the ground that it alleges the targets of the challenged discrimination are "neurotypicals," and therefore the alleged discrimination is not because of the handicap of the renter or buyer, as required by the statute. The Court agrees. Section 3604(f)(1), by its terms, prohibits discrimination in the sale or rental "because of the handicap of . . . that renter or buyer" or of someone associated with the renter or buyer or someone living in the house after the sale or rental. This section does not prohibit discrimination against a non-handicapped person in favor of handicapped persons. *See Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla.*, 46 F.4th 1268, 1276 (11th Cir. 2022) (holding that a violation of subsection (f)(1) requires that a handicapped person be treated worse than his or

her non-handicapped comparators). Count I therefore fails to allege a violation of this subsection.

Plaintiff cites to cases involving racial discrimination such as *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972), which hold that persons outside a protected class may in some cases have standing to sue as "aggrieved persons" under the FHA. But in those cases, persons outside the protected class were alleging injury to themselves based on discrimination against others who were members of the protected class. Thus, the cases address who has standing to sue for a violation that was sufficiently alleged, rather than the question here, which is whether a violation has occurred in the first place. Accordingly, they do not support Plaintiffs' position here, because Plaintiffs allege discrimination against individuals outside of the class protected by § 3604(f)(1). *See Wasserman v. Three Seasons Ass'n No. 1, Inc.*, 998 F. Supp. 1445, 1447-48 (S.D. Fla. 1998) (holding that persons outside protected groups may have standing to sue as "aggrieved persons" under the FHA, but only to the extent their claim is based on discrimination against members of the protected class).

Count I is therefore dismissed on this ground in addition to the shotgun pleading ground discussed above. While the dismissal is without prejudice, given the nature of the claim alleged, it appears unlikely that this count can be amended to state a claim for relief.

**Count II – Violation of the Fair Housing Act, 42 U.S.C. § 3604(c)**

Count II alleges a violation of § 3604(c) of the FHA, which prohibits the publication of statements that express a preference "based on" handicap with respect to the sale or rental of a dwelling. Plaintiffs allege that Defendants have issued or

published statements that express a preference for residents who have intellectual or developmental disabilities.  Royal American challenges the sufficiency of this count based on its failure to allege with specificity the statements Defendants published or issued in violation of § 3604(c).  Royal American, however, cites no case dismissing a claim under § 3604(c) on this ground, and the Court finds that this count states a claim for relief apart from the shotgun pleading issue discussed above.  Accordingly, Royal American's motion to dismiss based on a lack of specificity is denied and this count is dismissed without prejudice based solely on the shotgun pleading violation.

### Count III – Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1)

Defendants' only challenge to this count is the shotgun pleading issue discussed above.  This count is dismissed without prejudice on that ground.

### Count IV – Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)

Count IV alleges that Defendants maintained and enforced a "zero tolerance" policy with respect to rule violations and rejected Plaintiffs' requests to modify the rules as an accommodation.  The complaint also alleges that Defendants refused to allow guardians of residents to attend meetings or visit the facility to assist residents in making decisions.  Plaintiffs allege these refusals violated 42 U.S.C. § 3604(f)(3)(B), which provides that prohibited "discrimination" against handicapped buyers or renters in the sale or rental of a dwelling includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ."  To prevail on a claim under § 3604(f)(3)(B), a plaintiff must establish "(1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable

accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1218-19 (11th Cir. 2008)).

Defendants argue that the allegations of Count IV are insufficient because they do not allege Defendants knew or should have known that an accommodation was needed to allow the residents equal opportunity to use and enjoy the facility. Defendants also argue that guardians were denied access to the facility because they failed to comply with community rules, not based on anything related to the residents' disability. The complaint, however, sufficiently asserts that Defendants knew an accommodation was necessary:

> Noah's Landing had actual knowledge of the extent and nature of [the residents'] disability, as well as methods to mitigate any perceived direct threat.

> From Noah's Landing Staff's asserted knowledge and experience relating to the needs of persons with intellectual or developmental disabilities, any issue presented could have been mitigated by Applied Behavior Analysis (ABA) therapy through a qualified behavioral analyst to address the specific behavior.

In the context of the specific circumstances alleged in the complaint, Count IV states a plausible claim for relief. Defendants' cited cases, including *Hawn* and *Schwarz*, discuss the requirements for prevailing in a case under the FHA but were decided at the summary judgment stage, not on a motion to dismiss. Accordingly, the motion to dismiss Count IV is denied on this ground.

The Court also notes that Plaintiffs argue that no request was required because Defendants were otherwise aware of the need for accommodation. This argument appears to be unnecessary, since Plaintiffs allege a request for accommodation was made, and it is not well taken in any event. The authorities Plaintiffs cite in support of their position are not controlling and the Eleventh Circuit in *Schwarz*, 544 F.3d at 1219, stated unequivocally that "a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." Accordingly, Defendants' purported knowledge of Plaintiffs' disability does not dispense with the requirement that Plaintiffs request an accommodation for purposes of a claim under § 3604(f)(3).

### Count V – Violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(2)

42 U.S.C. § 3604(f)(2) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person." Count V of the complaint, after incorporating all 158 paragraphs of the general allegations, asserts that "the foregoing conduct" by Defendants constitutes discrimination in the terms, conditions, and privileges of a sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, "because of disability" in violation of 42 U.S.C. § 3604(f)(2). This type of shotgun pleading fails to provide Defendants with fair notice of the claim alleged.

Defendants move to dismiss this count on two additional grounds.  First, they argue that a claim under this subsection requires an allegation of discrimination that does not merely relate to "a dwelling," but more specifically relates to the "sale or rental" of a dwelling.  They interpret this provision to mean that the conduct must relate to the sale or rental transaction itself or must otherwise affect the accessibility or availability of housing itself, rather than merely impacting the plaintiff's use and enjoyment of the property in some way.  *See Schwarz v. Vills. Charter Sch., Inc.,* No. 5:12-cv-177-OC-34PRL, 2014 WL 12623013, at *1 (M.D. Fla. May 23, 2014); *Petty v. Portofino Council of Co-Owners, Inc.*, 702 F. Supp. 2d 721 (S.D. Tex. 2010).  They argue that the allegations of Count V "fail to explain that nature of the challenged rules and how any such rules are connected to Plaintiffs' dwellings or the sale or rental of their dwellings, that is to the accessibility and availability of housing."

Plaintiffs respond that Defendants' reading of the FHA is too narrow.  Plaintiffs argue that the FHA reaches post-sale or post-rental conduct and further that the complaint alleges claims arising out of rules that were put in place as part of the leases entered into by Plaintiffs.  This appears to the Court sufficient to link the complained of conduct to a "sale or rental" of the dwelling.  *See Bloch v. Frischholz*, 587 F.3d 771, 780 (7th Cir. 2009) (holding that a sufficient connection to rental or sale of a dwelling was shown by the fact that, as a condition of the sale, the plaintiffs agreed to be subject to the rules of the condominium association's board of managers, which plaintiffs alleged the board enforced in a discriminatory manner).[4]

---

[4] Plaintiffs also point to allegations regarding threats to evict them for rule violations as a sufficient connection to the accessibility or availability of housing.  In some cases, imminent

Defendants next argue that the complaint does not allege that Plaintiffs' disability "caused" the complained-of conduct. The Court disagrees. The complaint alleges that Defendants imposed and enforced rules that would not have been imposed on non-disabled individuals. Plaintiffs specifically allege that Royal American, "a property management company that manages fully integrated affordable housing properties," had "a set of rules that were applicable to neurotypicals for integrated housing, and harsh rules that were applicable to the neurodiverse."

The Court concludes that the facts pleaded are sufficient to state a plausible claim for relief. The Court notes, however, that Plaintiffs will ultimately have to present evidence to establish that Defendants acted from a discriminatory motive. As Plaintiffs' cited cases demonstrate, discrimination typically involves treating persons outside the protected class differently from those in the protected class. *See, e.g., Schwarz,* 544 F.3d at 1216 ("As its name suggests, a disparate treatment claim requires a plaintiff to show that he [or she] has actually been treated differently than similarly situated non-handicapped people."). Discriminatory intent may be difficult to show in the context presented here, where all the residents in the community managed by Defendants were disabled.

---

threats of eviction may present a sufficient connection to "availability" of housing. *See, e.g., Wells v. Willow Lake Ests., Inc.*, 390 F. App'x 956, 959 (11th Cir. 2010) (holding that claim was stated where the threat of eviction was a realistic danger). In view of the Court's ruling stated above, the Court need not decide whether Plaintiffs' allegations are sufficient on this ground as well.

### *Count VI – Florida Unfair and Deceptive Trade Practices Act*

Defendants VANL and ROAR argue only that Plaintiffs' request that the Court assess a civil penalty under FDUTPA be dismissed or stricken. Royal American argues that the FDUTPA claim should be dismissed in its entirety for failure to plead the claim with particularity. Plaintiffs' response states that Plaintiffs are withdrawing the FDUTPA claim and therefore they have not responded to Defendants' arguments as to this count. However, at a recent status conference, Plaintiffs clarified that they are abandoning only the request for a civil penalty.

As Plaintiffs have not responded to Royal American's arguments regarding the failure to plead the claim with particularity, Count VI is dismissed on that basis and on the shotgun pleading ground discussed above, without prejudice and with leave to amend.[5]

### *Count VII - Breach of Contract (Third Party Beneficiary)*

Count VII of the complaint asserts a claim against VANL for breach of an Extended Low-Income Housing Agreement (ELIHA). Plaintiffs allege that VANL breached the contract by "failing to develop facilities providing certain services and operational standards required under the contract." Plaintiffs also more specifically allege that VANL breached the contract by charging low-income residents $230 or $235 per month for services that "were to be provided to residents without any additional charge," and failing to provide residents who did not pay the additional amount services "that were promised in the agreement."

---

[5] The complaint's deficiencies with regard to particularized pleading of fraud are discussed in connection with Count VIII below.

The ELIHA is a contract between the Florida Housing Finance Corporation ("FHFC") and Defendant VANL.  Plaintiffs are not parties to the contract, but they allege they are entitled to enforce it as third-party beneficiaries.  The complaint grounds this assertion of third party standing on a "reliance provision" that provides the representations and covenants in the agreement may be relied on by "all persons interested in the legality and validity of the [Defendant's] use of the Tax Credits."  The complaint also relies on an enforcement provision that Plaintiffs allege "provid[es] a remedy for tenant and the FHFC in the event of Defendant default in the performance of its obligations therein, as well as the breach of any covenant, agreement, or warranty of the ELIHA."

VANL moves to dismiss this count on the ground that the complaint fails to allege facts showing that Plaintiffs have standing as third-party beneficiaries.  The applicable legal standard is undisputed.  Plaintiffs must allege the clear intent of the contracting parties that the contract primarily and directly benefit Plaintiffs or a class to which Plaintiffs belong.  *See, e.g.*, *Pimentel v. Strength20, LLC*, No. 2:23-cv-544-JLB-KCD, 2024 WL 3952429, at *5 (M.D. Fla. Aug. 27, 2024); *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028 (Fla. 4th DCA 1994) ("A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong.").  Although Plaintiffs' allegations of standing refer to specific provisions of the ELIHA, they did not attach that agreement to their complaint.  VANL has provided a copy of the agreement with its motion to

dismiss,[6] and argues that the provisions Plaintiffs rely on do not show the necessary

clear intent to directly and primarily benefit Plaintiffs.

First, under the "reliance" provision, section 8 in the ELIHA, the

representations and covenants in the ELIHA may be relied on by "all persons

interested in the legality and validity of the [Defendant's] use of the Tax Credits."

VANL argues this provision does not indicate a clear intent to directly benefit

Plaintiffs.  It is difficult to see how Plaintiffs, as residents in the low-income housing

community, have any interest in the legality or validity of tax credits, which have

nothing to do with the issues of community services and charges forming the subject of

Plaintiffs' breach of contract claim.

Second, VANL argues, the "enforcement" provision cited in the complaint also

does not manifest an intent to benefit Plaintiffs.  This provision expressly addresses

enforcement by certain tenants of two ELIHA provisions, sections 2(n)(vi) and

2(n)(vii).  Section 2(n)(vi) appears to relate to the percentage of low-income units in the

community and is not relevant to Plaintiffs' allegations.  Section 2(n)(vii) has two

aspects.  The first relates to eviction or termination of tenants for other than good

cause.  Although the complaint refers to threats of termination for rule violations,

Plaintiffs do not allege any actual terminations.  The second aspect of section 2(n)(vii)

relates to increases in "Gross Rent with respect to any such unit in excess of the

amount allowable as Rent-Restricted Unit."  Although the complaint refers to "Gross

---

[6] A document outside the four corners of the complaint may be considered on a motion to
dismiss where it is central to the plaintiff's complaint and its authenticity is undisputed. *Day
v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Rent" in paragraph 51 of the general allegations, Count VII as it stands contains no express allegation of a breach of section 2(n)(vii).

Plaintiffs respond in two ways.  First, they argue that the motion to dismiss should be denied because the complaint alleges the ELIHA incorporated other "FHFC program documents including land use restriction agreements, Applications, Requests for Proposals, and the terms of the ELI Loan, and SAIL Loan."  They argue that VANL has failed to provide the Court with copies of these other documents.  Therefore, Plaintiffs argue, VANL has not attached the complete agreement, and the Court should not grant VANL's motion to dismiss based solely on the text of the ELIHA agreement itself.

While Plaintiffs' argument might have some force in other circumstances, it ignores the fact that it is Plaintiffs' burden to plead a factual basis for their standing to sue as third-party beneficiaries.  Their complaint attempts to do that by focusing on provisions of the ELIHA – not on other documents incorporated by reference and not presently in the record.  If the allegations of the complaint as to third party status based on the "reliance" and "enforcement" provisions of the ELIHA are insufficient, then Plaintiffs have "fail[ed] to plead enough factual allegations sufficient 'to raise a right to relief above the speculative level[.]'"  *See Thompson v. Carnival Corp.*, No. 20-22217 -Civ-WILLIAMS/TORRES, 2020 WL 8224964, at *10 (S.D. Fla. Sept. 11, 2020); *Hinkle v. Continental Motors, Inc.*, No. 8:16-cv-2966-T-36MAP, 2018 WL 10096596, at *3 (M.D. Fla. Sept. 13, 2018) ("Where the allegations are insufficient to infer an intent to benefit third parties, and the defendant directly contests that specific claim, dismissal is appropriate.").  The possibility that other documents not before the Court

might reveal the required clear intent to benefit Plaintiffs is not sufficient to avoid dismissal.

Plaintiffs' second point in response to VANL's motion to dismiss appears to argue that, because the enforcement provisions show an intent to confer on tenants rights of enforcement for *specific* obligations, a more *general* intent can be gleaned to allow tenant enforcement of *all* obligations. The Court rejects this argument. To the extent Plaintiffs are unable to bring their claims within the express terms of one of these provisions (or perhaps other provisions in the documents that the ELIHA incorporates by reference), Plaintiffs fail to state a claim under a third-party beneficiary theory. Far from evidence of a general intent to benefit Plaintiffs in areas not covered by the provisions themselves, under the principle of *expressio unius est exclusio alterius*, these provisions point in the opposite direction. *See, e.g.*, *Hall v. Sargeant*, No. 18-80748-CIV, 2020 WL 1536435, at *19 (S.D. Fla. Mar. 30, 2020) (holding that a contract's grant of rights to third parties in one section, with no mention of third parties in the other, "strongly suggested" that third parties had no rights under the latter section); *see also Witkowski v. Brian, Fooshee & Yonge Props.*, 181 S.W.3d 824 (Tex. App. 2005) (holding that where a Land Use Restriction Agreement provided for enforcement of some provisions by tenants, but was silent as to the cause of action the tenants sought to assert, the agreement failed to express a clear intent to provide tenants with the cause of action).

Finally, Plaintiffs argue that the allegations that VANL has charged low-income residents a monthly fee for services that should have been free alleges an improper rent increase under the ELIHA. This argument at least suggests a violation of the

prohibition in Section 2(n)(vii) on increases in Gross Rent, which is enforceable by tenants. But a suggestion is all it is. As noted above, Count VII does not refer to Gross Rent or section 2(n)(vii), so it is not clear whether the complaint attempts to allege such a violation.

This count is therefore dismissed for two reasons. First, it is a shotgun pleading. Plaintiffs may amend this count, but in repleading they should clarify which of their general allegations relate to this count and incorporate only those allegations. In addition, to the extent Plaintiffs allege VANL failed to "develop facilities providing certain services and operational standards required under the contract," they should at a minimum specify the contractually required "services" and "operational standards" VANL allegedly failed to comply with.

Second, for the reasons set forth above, this count is dismissed on the additional ground that Plaintiffs have failed to allege facts showing the contracting parties' clear intent to primarily and directly benefit them with respect to the breaches alleged. Plaintiffs may amend this count to try to cure this deficiency. While, as Plaintiffs note, they are not generally required by the rules of procedure to attach a copy of the relevant contracts, doing so in this case might be necessary to support their standing as third-party beneficiaries and might also provide needed focus and clarity.

### Count VIII – Fraud

Count VIII of the complaint asserts a claim for fraud against VANL, ROAR, and Royal American. Defendants move to dismiss this count on the ground that it fails to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

To satisfy Rule 9(b), Plaintiffs must set forth "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1196 (S.D. Fla. 2013) (citing *McGee v. JP Morgan Chase Bank, NA,* 520 F. App'x 829, 831 (11th Cir. 2013)). "Essentially, a plaintiff satisfies Rule 9(b) by alleging who, what, when, where, and how." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1294 (M.D. Fla. 2018) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).

Defendants argue that Count VIII fails to identify the specific fraudulent conduct committed by each Defendant and fails to sufficiently identify the precise misrepresentations at issue. The Court agrees that Plaintiffs' fraud claim does not pass muster under Rule 9(b).

Count VIII begins by incorporating all 158 paragraphs of general allegations and then alleges in paragraph 212 that Defendants "misrepresent[ed] the costs associated with public areas financed through Tax Credits . . .." It appears that this alleged misrepresentation – which is not further explained – was made in an application to the FHFC, and therefore was a misrepresentation to a third party, not to Plaintiffs. *See Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022) ("[R]eliance requires the plaintiff to have received, believed, and acted upon a misrepresentation by the defendant.") (quotation omitted)

Plaintiffs allege that "Defendants fraudulently charged tenants for services which they could not lawfully charge." But adding the adjective "fraudulent" to describe a charge, even if the charge was improper, is not the same thing as alleging with particularity a knowingly false representation of material fact. Finally, this paragraph concludes with the assertion, "Defendants thereby made material misrepresentations to the Plaintiffs to perpetrate fraud," as if the preceding sentences in the paragraph somehow referred to false representations of fact to Plaintiffs, which they do not.

The second alleged fraudulent representation appears in paragraph 214, which asserts that "Defendants represented to Plaintiffs that the premises were, are, and would be operated in accordance with the requirements of the low-income housing credit program." While this allegation at least refers to a false representation to the Plaintiffs, it is silent as to what person or entity made this representation, how it was made, or where and when it was made, other than "at the point of contract formation." Accordingly, these allegations fail to satisfy the requirements of Rule 9(b).[7]

Finally, Count VIII in paragraph 219 refers to "affirmative misrepresentations," but the misrepresentations are not specified. It then appears to change gears and to allege an alternative theory of failure to disclose information despite a duty to do so. This intermingling of theories is unnecessarily confusing.

_____

[7] Plaintiffs refer to a number of paragraphs incorporated by reference in Count VIII but none of them add any clarity or assert with particularity the false representations of fact on which Plaintiffs base their fraud claim. Among those paragraphs are allegations referring to representations to Florida Medicaid, but these representations are not expressly mentioned in Count VIII at all.

In addition to lacking particularity as to the claimed misrepresentations, the complaint fails to sufficiently plead each Defendant's responsibility for the alleged fraud. Indeed, since the complaint does not make clear precisely what representations are at issue, it would be difficult to attribute a specific representation to a specific defendant.

Accordingly, Count VIII is dismissed with leave to amend based on the shotgun pleading violation and the failure to plead fraud with the required particularity. Plaintiffs may amend this count to try to overcome these deficiencies.

### Count IX – Unjust Enrichment

"To state a claim for unjust enrichment, a plaintiff must allege 'a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (quoting *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). Count IX alleges that Plaintiffs conferred a benefit on VANL by paying a "Lifestyle Enrichment Activity (LEA) fee," in order to be allowed to participate in activities and programs promised in the Land Use Restriction Agreement and that "the circumstances are such that it would be inequitable" to allow VANL to retain "the benefits previously paid for."

VANL moves to dismiss this count on the ground that an unjust enrichment claim fails if the transaction at issue is premised on an express contract, citing *Samana Inc. v. Lucena*, 156 F. Supp. 3d 1373 (S.D. Fla. 2016). VANL argues that

Plaintiffs' unjust enrichment claim is "premised on" or "covered by" an express

contract, because in Count VIII, which alleges a claim for fraud, Plaintiffs allege that

the service fee was illegally charged and seek to rescind "the contracts" and award

Plaintiffs "the full amount of the rent they paid."  Plaintiffs respond that they are

permitted to plead inconsistent claims in the alternative and note that Count IX does

not incorporate any paragraphs from Count VIII by reference.

While Plaintiffs are correct about the incorporation of allegations from Count

VIII, it appears they nevertheless fall victim to their own shotgun pleading.  The

unjust enrichment count incorporates all the general allegations, including

paragraphs 73 and 74.  These paragraphs allege that the service fees Plaintiffs

complain about were paid pursuant to an "activity agreement" which allowed them to

participate in various activities in exchange for a monthly "Lifestyle Enrichment

Activity (LEA) fee."  Those residents who declined to "agree to the LEA contracts"

were not allowed to participate in these activities and denied discount prices on meals,

the use of the Villages van, and other things.

Thus, Plaintiffs have not pleaded the existence of a contract and unjust

enrichment in the alternative.  Instead, the unjust enrichment count itself

affirmatively alleges the existence of an express contract covering the payment of the

fee, and the unjust enrichment claim is therefore due to be dismissed on this ground in

addition to the shotgun pleading issue.  *See Glob. Network Mgmt., LTD. v. Centurylink

Latin Am. Sols., LLC*, 67 F.4th 1312, 1317 (11th Cir. 2023) (affirming dismissal of

unjust enrichment claim, and holding that "[w]hen a contract addresses a certain

topic, that topic cannot be the subject of a claim for a contract implied in law"); *see also*

*Alfaro v. Bank of Am., N.A.*, No. 21-10948, 2024 WL 1110945, at *8 (11th Cir. Mar. 14, 2024) (affirming dismissal of unjust enrichment count and explaining, "[b]ecause [the plaintiffs] alleged an express contract as part of their unjust enrichment claims, they are not entitled to an unjust enrichment remedy under Florida law.").

As neither the LEA agreement nor its terms is before the Court, and VANL has not admitted the existence of a valid agreement, the Court cannot at this point conclusively rule out the possibility that an unjust enrichment claim is viable. Plaintiffs may therefore amend their complaint to try to state a claim for unjust enrichment. In re-pleading, Plaintiffs should carefully consider whether an unjust enrichment claim is viable under the circumstances of this case. In that regard, given Plaintiffs' allegations that residents who paid the LEA fee were given access to benefits that other were not, Plaintiffs should also consider whether *Pincus*, 333 So. 3d at 1097-98, forecloses an unjust enrichment claim because VANL provided consideration in exchange for the "benefit" it received in the form of fee payments.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED:**

1. "Defendant, Constance Bamberg's Motion to Dismiss First Amended Complaint" (Doc. 25) is **GRANTED** as set forth herein.

2. "Defendant, Noah's Ark of Central Florida, Inc., d/b/a ROAR Florida's Motion to Dismiss First Amended Complaint" (Doc. 26) is **GRANTED** as set forth herein.

3. "Defendant, Villages at Noah's Landing, LTD.'s Motion to Dismiss First Amended Complaint" (Doc. 27) is **GRANTED** as set forth herein.

4. "Defendant Royal American Management, Inc.'s Motion to Dismiss First Amended Class Action Complaint" (Doc. 29) is **GRANTED** as set forth herein.

5. The "First Amended Class Action Complaint and Demand for Jury Trial" (Doc. 11) is dismissed without prejudice and with leave to amend.

6. Plaintiffs are directed to file a second amended complaint to cure the defects identified in this Order on or before October 30, 2025. The failure to file an amended complaint as directed will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 30th day of September, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE