**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MARK MURPHY and MARIA MURPHY, as guardians of OLIVIA MURPHY, et al.,

Plaintiffs,

v. Case No.: 8:25-cv-22-TPB-TGW

VILLAGES AT NOAH'S LANDING LTD., et al.,

Defendants.
_______________________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on "Defendant, Constance Bamberg's Motion to Dismiss Second Amended Complaint" (Doc. 100), "Defendant, Noah's Ark of Central Florida, Inc.'s Motion to Dismiss Second Amended Complaint" (Doc. 101), "Defendant, Villages at Noah's Landing, Ltd.'s Motion to Dismiss Second Amended Complaint" (Doc. 102), and "Defendant Royal American Management, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint." (Doc. 103). Plaintiffs filed an "Omnibus Response to Defendants' Motions to Dismiss Second Amended Complaint." (Doc. 121). Upon review of the motions, the response, the court file, and the record, the Court finds as follows:

## Background

This case is a putative class action brought by parents on behalf of their adult children who reside at the Villages at Noah's Landing (the "Villages"), a residential

community for adults with developmental and intellectual disabilities. The Villages was developed by and is owned by Defendant Villages at Noah's Landing, Ltd. ("VANL"), a limited partnership. VANL's general partner is The Villages at Noah's Landing Members LLC, of which the sole officer is Defendant Noah's Ark of Central Florida, Inc., d/b/a ROAR Florida ("ROAR"). Defendant Constance Bamberg is the president of ROAR. VANL's sole limited partner is Regions Bank, with a 99.99% ownership interest. Defendant Royal American Management, Inc. ("RAM") operates the Villages along with ROAR.[1]

VANL successfully applied to the Florida Housing Finance Corporation ("FHFC")[2] for financing for the development of the Villages. The financing VANL obtained included both loans and the allocation of low-income housing tax credits to attract private investment. Plaintiffs allege that the Villages' construction costs totaled almost $15 million, most of which came directly or indirectly from these publicly administered funding sources. VANL's application to the FHFC contained promises that the Villages would not only provide low-income housing but would also provide certain services to its disabled residents free of charge. In exchange for the financing, VANL entered into an Extended Low Income Housing Agreement (ELIHA)

---

[1] Plaintiffs named Atala Consulting, Inc., as a defendant in their amended complaint. On August 18, 2025, Atala filed a suggestion of bankruptcy, and the Court thereafter stayed all proceedings as to Atala. The second amended complaint asserts no claim against Atala.
[2] The FHFC is "an entrepreneurial public corporation organized to provide and promote the public welfare by administering the governmental function of financing or refinancing housing and related facilities in this state[.]" § 420.504, *F.S.* The FHFC, among other things, awards an "annual allocation of low-income housing tax credits, nontaxable revenue bonds, and State Apartment Incentive Loan Program [SAIL] funds appropriated by the Legislature and available to allocate by request for proposals or other competitive solicitation." § 420.507(48), *F.S.*

with the FHFC and a separate Land Use Restriction Agreement (LURA) with the FHFC, as well as loan documents with several lenders.

Plaintiffs allege that Defendants represented the Villages as a safe, supportive environment with adequate services and opportunities for socialization, but that instead, the Villages has unlawfully charged them for inadequate services and maintains an environment that "victimize[s]" the residents rather than supporting them. Specifically, Plaintiffs allege, among other things, that the Villages induced Plaintiffs to reside at the Villages and enter into leases by misrepresenting that certain services would be provided at no cost and then charging for the services and/or not providing them as promised. Plaintiffs also allege Defendants unlawfully exclude non-disabled or "neurotypical" individuals from residing at the Villages, thereby depriving residents of opportunities for socialization. They allege that the Villages discriminates against disabled residents by imposing rules and regulations that would not be imposed on non-disabled individuals and with which residents cannot comply due to their disabilities. Defendants, they allege, selectively impose a policy of "zero tolerance" and threaten residents with eviction for rule violations.

Based on these and other allegations, Plaintiffs' first amended complaint, which was 69 pages and 227 numbered paragraphs long, asserted violations of the Fair Housing Act ("FHA"), violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of contract, fraud, and unjust enrichment. (Doc. 11). The Court granted Defendants' motions to dismiss the amended complaint, ruling that it was a shotgun pleading because it overincorporated general allegations into each count. (Doc. 83). The Court additionally ruled, among other things, that (1) Plaintiffs

failed to state a claim for violation of 42 U.S.C. § 3604(f)(1) of the FHA because exclusion of non-handicapped individuals does not violate that statutory provision, (2) Plaintiffs failed to state a claim for breach of a contract between VANL and FHFC because they failed to allege facts demonstrating their standing as intended third party beneficiaries of that contract, (3) Plaintiffs failed to alleged their fraud and FDUTPA claims with particularity as required by Fed. R. Civ. P. 9(b), and (4) Plaintiffs failed to state a claim for unjust enrichment.

The Court rejected other arguments for dismissal raised by Defendants and granted Plaintiffs leave to file a second amended complaint, which they did. (Doc. 93). The second amended complaint eliminates some counts but is even longer than its predecessor, with 116 pages and 327 numbered paragraphs. Defendants have again filed motions to dismiss.

## **Legal Standard**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As courts have explained, the purpose of rule (9)(b) is to ensure that

defendants have sufficient notice and information to formulate a defense. *See Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1294 (M.D. Fla 2018). "Essentially, a plaintiff satisfies Rule 9(b) by alleging who, what, when, where, and how." *Id.* (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

**Analysis**

Defendants' motions to dismiss argue (1) that Counts I, II, and III of the second amended complaint fail to state claims for violations of the FHA, (2) that the second amended complaint remains a shotgun pleading in certain respects, (3) that the FDUTPA and fraud claims in Counts IV and VI are not pled with the particularity required by Fed. R. Civ. P. 9(b), and (4) that in Count V, Plaintiffs fail to state a claim against VANL as third party beneficiaries of a contract or contracts between VANL and the FHFC.

As discussed below, the Court agrees with Defendants that Count I fails to state a claim under the FHA, but the Court rejects Defendants' arguments for dismissal of

Counts II and III. The second amended complaint is overly long and unnecessarily complicated, but it does not violate the shotgun pleading rule except with respect to the breach of contract claim, which fails to identify the contract or contracts sued upon and prevents the Court from evaluating Plaintiffs' arguments for third party beneficiary status. Plaintiffs' FDUTPA and fraud claims are pleaded with sufficient particularity.

Accordingly, as set forth below, Count I (FHA) is dismissed with prejudice, Count V (breach of contract) is dismissed without prejudice, and Defendants' motions to dismiss the second amended complaint are otherwise denied.

***Count I – Violation of Fair Housing Act, 42 U.S.C. § 3604(f)(1)***

Plaintiffs allege that Defendants by their conduct have excluded nondisabled persons from residency at the Villages and that this conduct this violates § 3604(f)(1) of the FHA. Section 3604(f)(1) of the FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer of renter because of a handicap of– (A) that buyer or renter, (B) a person residing in or intending to reside in the dwelling after it is sold, rented, or made available, or (C) any person associated with the buyer or renter." 42 U.S.C. § 3604(f)(1) (emphasis added).

The Court previously ruled that § 3604(f)(1) prohibits the exclusion only of disabled or handicapped individuals from housing, which is not alleged to have occurred here. The Court's prior order specifically pointed to statutory language limiting the prohibited conduct to discrimination in the sale or rental of a dwelling, or otherwise making a dwelling unavailable, "to any buyer or renter because of a

handicap of . . . *that buyer or renter*. . . ." Plaintiffs' response does not address this language at all. In fact, in the second amended complaint, Plaintiffs try to avoid the problem by omitting the problematic language from their quotation of the statute, without any indication that the quotation has been altered. *See* (Doc. 93, ¶ 113).[3]

Plaintiffs argue that they state a claim under § 3604(f)(1) because the exclusion of non-disabled persons adversely affects disabled residents by isolating them. The existence of harm to the residents such as Plaintiffs arising from the exclusion of non-handicapped individuals would be relevant to Plaintiffs' *standing* to assert a claim under this statutory provision, *if* Plaintiffs alleged a violation of the provision. But Plaintiffs' problem here is not standing to sue for a statutory violation; it is the existence of a statutory violation in the first place. None of Plaintiffs' cited cases persuades the Court that the claim asserted in this count is viable.[4] Plaintiffs' attempt to state a claim under this section is fundamentally flawed and further amendment would be futile. Count I is therefore dismissed with prejudice.

---

[3] As set forth above, the statute makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer of renter because of a handicap ***of– (A) that buyer or renter,*** (B) a person residing in or intending to reside in the dwelling ***after*** it is sold, rented, or made available, or (C) any person associated ***with the buyer or renter***." 42 U.S.C. § 3604(f)(1) (emphasis added). Plaintiffs' altered quotation states that the statute makes it unlawful "[t]o discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." Plaintiffs fail to note their omission of the phrase "of that buyer or renter."

[4] Plaintiffs cite *Olmstead v. L.C. by Zimring*, 527 U.S. 581 (1999), for the proposition that "[c]ourts applying § 3604(f)(1) consistently find liability where disabled residents are forced into segregated or institutional housing models." *Olmstead* did not involve § 3604(f)(1) and does not stand for the proposition urged by Plaintiffs.

***Count II – Violation of the Fair Housing Act, 42 U.S.C. § 3604(c)***

Count II alleges a violation of § 3604(c) of the FHA, which prohibits the publication of statements related to the sale or rental of a dwelling that indicate a "preference, limitation, or discrimination" that is "based on" handicap. Plaintiffs allege that Defendants issued or published statements that expressed a preference for residents with intellectual or developmental disabilities.

Defendants do not argue that the conduct alleged falls outside the statutory prohibition on publications that express a preference "based on" handicap. Defendants argue, however, that Count II contains allegations contradicted by allegations in Counts IV and VI. Specifically, Plaintiffs allege in some paragraphs that Defendants published materials promising that the Villages would be an integrated community with both disabled and non-disabled residents. In other paragraphs of the complaint, Defendants argue, Plaintiffs allege that Defendants published materials representing or suggesting that the Villages would be limited to disabled residents. Therefore, Defendants argue, these contradictions render Counts II, IV, and VI deficient. Plaintiffs respond that the contradictory nature of the allegations is "intentional," because Defendants themselves made contradictory representations at different times or to different persons.

While there is apparent tension between these allegations, the specific publications or venues in which the contradictory representations were made is not clear from the complaint, and the Court therefore cannot determine that these

allegations are fatally contradictory. This Court concludes that this issue is better dealt with at the summary judgment stage on the basis of a more complete record.[5]

The motions to dismiss Count II are therefore denied as to this ground.

***Count III -Violation of Fair Housing Act, 42 U.S.C. § 3604(f)(2)***

Count III alleges that Defendants' imposition of various rules and requirements that would not be imposed on non-disabled residents violates § 3604(f)(2) of the FHA. That section prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of handicap." RAM argues the complaint must be dismissed because it fails to allege facts to demonstrate that RAM intended to discriminate against handicapped residents and suggests that the fact that all residents at the Villages were handicapped precludes the existence of discriminatory intent.

The Court denied Defendants' motions to dismiss the corresponding count in the amended complaint based on allegations that are repeated in the second amended complaint. The second amended complaint, as did the amended complaint, alleges that "as a result of the occupancy being only for those with developmental or intellectual disabilities, the Defendants have imposed additional requirements and onerous conditions on the tenancy of the residents *solely because of their disability*." (emphasis added) (Doc. 93, ¶ 48). Paragraph 140 alleges that "Defendants . . . have

[5] Defendant RAM also argues that Count II fails to state a claim because Plaintiffs have failed to identify the publications at issue with specificity. The Court disagrees. Fed. R. Civ. P. 8 requires only a short and plain statement of facts making out a plausible claim for relief. Count II does that and provides Defendants with fair notice of the claim.

imposed and enforced discriminatory terms, conditions, and oversight mechanisms at The Villages at Noah's Landing that subject residents with developmental and intellectual disabilities to intensive medical scrutiny, behavioral surveillance, and restrictive rules *not imposed upon nondisabled tenants in comparable housing*." (emphasis added) And in Paragraph 146, Plaintiffs allege "No nondisabled tenants in comparable housing are required to disclose medical diagnoses, treatment histories, or therapeutic information as a condition of tenancy."

These allegations assert that Defendants treated Plaintiffs in a certain way precisely because they are disabled. As the Court noted in its prior order, the fact that the entire population of the Villages is disabled may make a discriminatory motive difficult to prove. But Plaintiffs have alleged enough to avoid dismissal. The motion to dismiss is denied as to this ground.

RAM also argues that Count III should be dismissed because it is duplicative of the claims asserted in Counts I and II. Although there is a substantial overlap between the allegations of Counts I, II, and III, each count focuses on a different aspect of the alleged course of conduct and alleges violations of different statutory provisions. Count III is not merely redundant of the other counts.

Accordingly, the motion to dismiss is denied as to Count III.

***Shotgun Pleading***

Defendants argue that second amended complaint once again violates the prohibition on shotgun pleadings. A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive

pleading." *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996). The Eleventh Circuit has identified four primary types of shotgun pleadings:

> (1) complaints containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;
>
> (2) complaints that do not commit the mortal sin of re-alleging all preceding counts but are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;
>
> (3) complaints that commit the sin of not separating into a different count each cause of action or claim for relief; and
>
> (4) complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which actions or omissions, or which of the defendants the claim is brought against.

*See Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Defendants argue that Counts I, II, and III violate the shotgun pleading rule. For the reasons discussed above, the Court is dismissing Count I with prejudice and therefore will consider the shotgun pleading issue only as it relates to Counts II and III. Unlike its predecessor, the second amended complaint does not incorporate *all* general allegations into these counts. Instead, each count incorporates only specifically identified paragraphs. Defendants argue, however, that Counts II and III still incorporate by reference many paragraphs containing allegations that are irrelevant (or only tangentially relevant) to the claim asserted.

While the second amended complaint is not a model of clear or concise pleading, the Court finds that the allegations in the counts themselves are sufficiently clear that

the incorporation of some irrelevant or arguably irrelevant paragraphs from the general allegations does not make it difficult for Defendants to know which allegations are relevant to each count nor does it prevent them from framing their responsive pleadings. *See id.* at 1324–25 (reversing dismiss of complaint on shotgun pleading grounds where the arguable over-incorporation of general allegations did not "increase[] the burden of understanding the factual allegations underlying each count"). Accordingly, to the extent Defendants move to dismiss Counts II and III based on over-incorporation of general allegations, the motions to dismiss are denied.

Defendant VANL also attacks Counts II and III as violating the shotgun pleading rule because they allege that the "Defendants" collectively took certain actions. For the same reasons that the Court rejected this argument as a basis for dismissal of the amended complaint, the Court concludes once again that collective references to "Defendants" in these counts do not violate shotgun pleading rule.

Defendants' motions to dismiss Counts II and III of the second amended complaint based on the shotgun pleading rule is therefore denied.[6]

***Counts IV and VI - Florida Deceptive and Unfair Trade Practices Act; Fraud***

Count IV of the second amended complaint asserts a claim against VANL, ROAR, and RAM under the Florida Deceptive and Unfair Trade Practices Act and Count VI asserts a claim against the same defendants for common law fraud. Both claims are largely based on the same allegedly fraudulent and deceptive conduct.

[6] Plaintiffs' breach of contract claim is discussed separately below and will be dismissed for failure to sufficiently identify the contracts sued upon and to separate claims under different contracts into separate counts, which is a shotgun pleading issue.

Defendants move to dismiss both counts on the ground that they fail to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).[7]

Satisfying Rule 9(b) generally requires that the plaintiff allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1196-97 (S.D. Fla. 2013) (citing *McGee v. JP Morgan Chase Bank, NA,* 520 F. App'x 829, 831 (11th Cir. 2013)).

As Plaintiffs argue, however, these requirements may be relaxed in alleged fraudulent schemes involving multiple actions and an extended time frame. *See, e.g., Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662-63 (11th Cir. 2015). Moreover, the purpose of the particularity requirement is to provide defendants with fair notice of the claim they must defend and guard against spurious charges of fraud by ensuring that the plaintiff has some evidence to support the charge prior to filing suit, rather than merely hoping to find evidence in discovery. *See, e.g.*, *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318 & n.26 (11th Cir. 2024); *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988). Accordingly, while pleading the specifics as to date, time, and place is typically required, courts have in various circumstances permitted alternate means of meeting the twin goals of precision and

[7] "FDUTPA claims that sound in fraud must comply with Rule 9(b)." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025).

substantiation. *See Durham*, 847 F.2d at 1512; *San Jacinto Sav. Ass'n v. TDC Corp. of Fla.,* 707 F. Supp. 1579, 1581 (M.D. Fla. 1989); *Outlet Commc'ns, Inc. v. King World Prods., Inc.*, 685 F. Supp. 1570, 1579 (M.D. Fla. 1988). The Eleventh Circuit has therefore cautioned that "a court should 'hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant[s] [have] been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts.'" *Gose*, 109 F.4th at 1318 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Plaintiffs' previous complaint failed to satisfy the particularity requirement, largely because it failed to make clear precisely what misrepresentations were alleged. This defect, combined with allegations that the representations were made by "Defendants," made it difficult or impossible for each of the Defendants to know precisely what false representations it was being charged with and to develop its defense. As the Court observed, "since the complaint does not make clear precisely what representations are at issue, it would be difficult to attribute a specific representation to a specific defendant."

In contrast, the FDUTPA and fraud counts in Plaintiffs' second amended complaint do identify numerous specific representations and omissions. Plaintiffs allege, for example, that Defendants (1) misrepresented that certain services would be provided to residents free of charge (such as 24-hour onsite management, transportation, employment and educational opportunities, and office space to meet with outside professionals, (2) misrepresented the nature of the LEA fee as a fee to

obtain "enhanced" or "additional" services, (3) failed to disclose the tax and benefit-eligibility consequences that could follow from residents' (or their parents) paying the LEA fee, and (4) misrepresented the extent to which the community would include neurotypical individuals and provide opportunities for socialization. Plaintiffs also allege the documents and other communications in which the representations appeared, including in VANL's application to the FHFC for financing, in advertising and promotional materials, on websites, in presentations, and in correspondence with residents' families.

Defendants' Rule 9(b) challenge to the second amended complaint focuses principally on the complaint's assertion that the various representations were made by "Defendants" without specifying each Defendants' role in the alleged misrepresentation. The Court concludes, however, that the additional details supplied in the second amended complaint as to the alleged representations and means of communication, combined with allegations as to the relationship of the Defendants to each other and their respective roles in operation of the Villages, provide Defendants with sufficient notice of the FDUPTA and fraud claims to allow them to prepare their defenses. The detail also gives the Court some assurance that Plaintiffs possessed evidence to support their charges of fraud prior to discovery. The Court notes also that Plaintiffs attached as exhibits to the second amended complaint documents containing specific promises and contractual commitments by VANL that Plaintiffs argue were made with no intent to perform. *See, e.g.*, *San Jacinto Sav. Ass'n*, 707 F. Supp. at 1581 (denying motion to dismiss fraud and RICO claims, noting that "[t]he exhibits attached to the complaint provide the required specificity").

Additional details such as more specifics as to the timing of any oral representations or presentations to families, would have been useful, but the specificity provided pushes the FDUTPA and fraud claims over the particularity line.

That is not to say the Court has concluded Plaintiffs' fraud and FDUTPA claims are viable in whole or in part. To the contrary, it appears that significant hurdles remain. For example, the second amended complaint does not explain how and when Plaintiffs reviewed and relied on representations allegedly made in contracts between VANL and the FHFC. *See Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022) ("[R]eliance requires the plaintiff to have received, believed, and acted upon a misrepresentation by the defendant.") (quotation omitted). The timing of any such review and receipt of any other misrepresentations may be particularly significant here. The LEA agreements, a copy of which Plaintiffs attach to the second amended complaint, made clear that some services would indeed require payment of an additional fee, contrary to the representations and commitments Plaintiffs allege they relied on. A party cannot rely on alleged representations, nor can representations give rise to a FDUTPA claim, if they are contradicted in a subsequent written contract. *See, e.g, TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009).

Plaintiffs also allege that Defendants failed to disclose to them the legal consequences of paying the fee and that Defendants had superior knowledge of these legal consequences.[8] However, in an arms-length transaction, one party's superior

[8] Plaintiffs allege that paying the fee could or would lead to the amount of the fee being included in residents' income for purposes of certain government benefits, rendering them ineligible for those benefits, including low-income housing. Defendants do not expressly

knowledge does not, without more, create a duty to disclose. "Such a duty does not exist in the absence of a fiduciary or other special or confidential relationship of trust because there is no duty imposed on either party to protect or benefit the other." *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott,* No. 11-80416-CIV, 2012 WL 13148744, at *3 (S.D. Fla. July 11, 2012) (citing *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.,* 850 So. 2d 536, 541 (Fla. 5th DCA 2003)). The landlord-tenant relationship is not a fiduciary relationship. *See, e.g.*, *Chris-Antonio v. I6 Prop. Fla. LP,* No. 8:23-cv-02397-MSS-NHA, 2024 WL 2880416, at *3 (M.D. Fla. Apr. 5, 2024), *report and recommendation adopted in relevant part, rejected in part on other grounds sub nom. Pow v. I6 Prop. Fla. LP,* 2024 WL 2152160 (M.D. Fla. May 13, 2024).

Plaintiffs assert that "Defendants stood in a position of trust and confidence with vulnerable individuals with intellectual or developmental disabilities." But no facts are alleged to show that Defendants undertook to advise, counsel, or protect Plaintiffs or their families with regard to the legal and financial consequences of becoming residents at the Villages. *See Taylor Woodrow Homes,* 850 So. 2d at 540 ("To

---

challenge Plaintiffs' allegations that these consequences would follow. Plaintiffs allege that Defendants were aware of these consequences based on a 2019 FHFC Office of Inspector General report. Plaintiffs assert that the report found the fees to be "problematic" and concluded that they "should not be charged separately." Plaintiffs also allege the report "detailed the effects [of the fee] on eligibility for Tax Credit financing." Plaintiffs filed the report with the Court in connection with their motion for class certification. (Doc. 106-7). The report appears to reflect hypothetical conclusions about residents' income and rent if one assumes the fees are included in income and are not optional. *See* (*id*. at 47-48). The report also indicates the FHFC obtained a legal opinion that the fees are permissible under LIHTC regulations if they are optional, and notes that the LEA forms indicate they are optional. *See* (*id*. at 15). The report concludes that VANL should "consider" whether to exclude from the fees amounts for services already paid for by other benefit sources and amounts VANL promised in its financing application would be provided without charge. (*Id.*). In short, the report does not appear to be the type of smoking gun evidence Plaintiffs suggest. However, this is an issue more appropriate for consideration at the summary judgment stage than on the pleadings.

establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.") (quoting *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993)). Plaintiffs cite no case holding that a landlord is necessarily in a fiduciary relationship with tenants who have cognitive disabilities. The Court notes also that, as evidenced by this lawsuit, Plaintiffs' parents are fully capable of looking after Plaintiffs' interests and acting on their behalf.

These issues are all substantive issues, however, not particularity problems, and resolving them will require a more developed record and briefing by the parties at the summary judgment stage.[9]

***Count V - Breach of Contract (Third Party Beneficiary)***

In Count V of the second amended complaint, Plaintiffs assert a claim against VANL for breach of contract as third-party beneficiaries. The previous version of Plaintiffs' contract count was based on a single contract, the ELIHA, of which Plaintiffs alleged they were intended third party beneficiaries. Plaintiffs based their third-party standing argument on two specific ELIHA provisions. The Court's prior dismissal order rejected Plaintiffs' arguments. As the Court explained in its order, the "Enforcement" provision in section 9 of the ELIHA, by expressly providing for Plaintiffs' right to sue for breach of specific contractual duties, thereby impliedly

---

[9] RAM also argues that Plaintiffs fail to plead damages cognizable under FDUTPA. Some of Plaintiffs' claimed damages, such as emotional distress damages or consequential damages, may not be recoverable under FDUTPA. But Plaintiffs also allege, among other things, their loss of the value of promised services and direct financial loss in the form of payments made for services that should have been free. RAM does not explain why such damages are not "actual damages" recoverable under FDUTPA.

excludes their right to sue for breach of other duties, including the duties Plaintiffs alleged in this lawsuit.

With the second amended complaint, Plaintiffs modify their approach to the contract claim in two ways. First, although Plaintiffs ignore the Court's prior order and continue to rely on the ELIHA's "Reliance" and "Enforcement" provisions, they also highlight allegations that VANL contractually undertook to provide specific services directly to residents of the development. Contract provisions requiring a performance that runs directly to a particular person or class of persons have been held to indicate an intent to benefit those persons. *See, e.g., DOZR, Ltd. v. Bighorn Constr. & Reclamation, LLC*, No. 8:22-cv-1042-TPB-AEP, 2023 WL 8811627, at *4 & n.4 (M.D. Fla. Dec. 5, 2023), *report and recommendation adopted,* 2023 WL 8806571 (M.D. Fla. Dec. 20, 2023) (applying New York law); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("A contractual requirement that the promisor render performance directly to the third party shows an intent to benefit the third party."); *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 811 (Fla. 3d DCA 1985) ("When a contract creates a right in favor of a third person, it is presumed that the parties intended to confer a benefit on him and he may sue for breach of the contract.")

On the other hand, other contractual provisions in the ELIHA cut against third party standing. As the Court noted in its prior order, the ELIHA expressly provides for enforcement by the FHFC in general but gives tenants a right to enforce only certain specifically identified ELIHA provisions. In addition, the ELIHA provides that it inures to the benefit of "each of the parties and their successors and assigns,"

without mentioning tenants or other third parties. These provisions impliedly indicate that tenants have no enforcement rights as to other provisions.[10]

Courts have declined to recognize third party rights to enforce a contract when the contract indicates an intent to disallow such enforcement. *See, e.g.*, *Andrews v. Marshall*, 845 F. App'x 845, 859 (11th Cir. 2021) ("The contract's terms indicate that Lee County and Corizon Health did not intend for a third party like Ms. Andres to benefit from their agreement."); *Alpino v. JPMorgan Chase Bank, N.A.*, No. 1:10-12040-PBS, 2011 WL 1564114, at *4 (D. Mass. Apr. 21, 2011) (holding that provision that contract "shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest" constituted "clear language limiting the class of actors who [could] enforce its terms[,]" and precluded the plaintiffs from showing they were intended beneficiaries); *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358-59 (Fla. 3d DCA 2006) ("Even if the Agreement for PIN services indirectly benefited Spread's customers who had purchased prepaid phone cards, the express intent demonstrated by the Agreement between Network and Infinity is to eliminate third-party actions."); *Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 526 (Fla. 4th DCA 2002) ("The existence of the liquidated damages clause allowing the County to recover delay damages indicates that the parties to the contract did not intend that the Sheriff enforce a separate remedy for the same delay.").

---

[10] Given these contract provisions, the fact that the Villages has been operating for 10 years, and Plaintiffs' allegations that the FHFC's Office of Inspector General reviewed the Villages' use of LEA fees and issued a report in 2019, reasonable people might question why the FHFC itself has not filed suit to enforce VANL's contractual obligations, if, as Plaintiffs claim, VANL has violated them so egregiously.

Moreover, in the context of government contracts, courts have held that third parties cannot recover unless the contract reveals a clear intent to allow third party enforcement. *See, e.g., Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 933 (11th Cir. 2013) ("[T]hird parties to government contracts are generally assumed to be incidental beneficiaries. To overcome this presumption, Interface must show that the parties clearly intended that Interface be permitted to sue to enforce the P&A Agreement.") (internal quotations and citations omitted); *Phillips v. United States*, No. 23-0140-WS-MU, 2024 WL 420147, at *2 (S.D. Ala. Feb. 5, 2024) (holding that for third party standing, "[t]he contract must establish not only an intent to confer a benefit, but also an intention to grant the third-party enforceable rights") (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003)); *Alpino*, 2011 WL 1564114, at *4 (holding that the test for a third party's right to enforce a government contract "must focus on whether the contract intended to provide the plaintiff with a legal cause of action, not just whether the plaintiff falls within a class of individuals that the contract and its underlying policies seek to benefit"); *Jenne*, 814 So. 2d at 525-26 ("The real test is said to be whether the contracting parties intended that a third person should receive a benefit *which might be enforced in the courts*.") (quoting 17A. Am. Jur. 2d *Contracts* § 440 (1991)) (emphasis altered).[11]

---

[11] *See also Astra USA, Inc. v. Santa Clara Cty.,* 563 U.S. 110, 117-18 (2011) (noting "[t]he distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention is emphasized where the promisee is a governmental entity.") (quoting 9 J. Murray, Corbin on Contracts § 45.6, p. 92 (rev. ed. 2007)); *Smith v. Washington Heights Apartments, Ltd.*, 794 F. Supp. 1141 (S.D. Fla. 1992) (holding that tenants of privately owned, federally subsidized housing complex were not third-party beneficiaries of contracts entered into between the Department of Housing and Urban Development and a private owner of complex where there was no indication that the parties to

Plaintiffs acknowledge that third party beneficiary status requires that the intent to benefit the third party be "clearly expressed in the contract." Given the arguably conflicting provisions noted above, it appears doubtful that the necessary clear expression of intent can be found. Plaintiffs' second change in their approach, however, prevents the Court from reaching a conclusion on this point. Plaintiffs no longer cite the ELIHA alone as the contract they are suing on. Instead, they now refer to "contracts and agreements" but fail to sufficiently identify those contracts and agreements.

For example, Plaintiffs allege in Count V that the "contracts and agreements" are "described" in paragraphs 14-41 of the general allegations. But these paragraphs cover a host of events, issues, and documents and do not "describe" the contracts at issue to the extent they are not already described in the count itself. Plaintiffs also allege that the contracts sued upon "include" (and therefore presumably are not limited to) six documents listed in the count, i.e., (1) VANL's application to FHFC for financing, (2) the ELIHA, (3) the LURA, (4) a State Apartment Incentive Loan (SAIL) Agreement, (4) an Extremely Low Income (ELI) Loan Agreement, and (5) a Low-Income Housing Tax Credit (LIHTC) Regulatory Agreement.

It is unexplained, however, how the application for financing itself constitutes a "contract." Moreover, the application, the ELIHA, and the LURA are attached as exhibits to the complaint, but the SAIL agreement, ELI agreement, and the Regulatory Agreement are not attached as exhibits nor are their relevant provisions

---

the contracts intended the tenants to have an enforceable right to bring suit under a third-party beneficiary theory).

described in the complaint. Plaintiffs' prayer for relief adds to the ambiguity. It seeks, among other things, a declaration that Plaintiffs are intended third party beneficiaries of "the contracts between [VANL] and the [FHFC]," referencing a list of contracts that omits VANL's application to the FHFC.

To complicate matters even further, while Plaintiffs appear to rely on the listed documents as separate contracts, they also allege that some of them (specifically, the application, the LURA, and unspecified "terms" of the SAIL and ELI agreements) are incorporated into the ELIHA. (Doc. 93, ¶ 195). This allegation about "incorporated" documents appears to be inconsistent with the ELIHA's terms, which expressly incorporate only the LURA, not the other referenced documents. *See* (Doc. 93-3, § 12). This exhibit controls over the conflicting allegations in the body of the complaint. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

This not proper pleading and makes it impossible to sort out the relevant contracts and contract terms that govern the third-party beneficiary issue. The Eleventh Circuit has identified the assertion of "breaches of multiple contracts in one breach of contract claim" – which Plaintiffs appear to have done here – as a shotgun pleading problem. *See Abdulla v. S. Bank*, No. 22-12037, 2023 WL 2988135, at *2 (11th Cir. Apr. 18, 2023). Plaintiffs' approach compounds this problem by failing to clearly identify the relevant contract or contracts, thereby injecting unnecessary confusion.

This approach to pleading is particularly troublesome in the context of trying to determine whether "*the contract* clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs." *See Biscayne*

*Inv. Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005) (emphasis added); *see also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005) ("The contracting parties' intent to benefit the third party must be specific and must be *clearly expressed in the contract* in order to endow the third party beneficiary with a legally enforceable right.") (emphasis altered). As VANL argues, Plaintiffs have moved from reliance on the ELIHA to reliance on various provisions picked from "a host of agreements," including "contracts nested within contracts," making it difficult if not impossible to analyze the third-party beneficiary issue based on the parties' intent and the terms of the contracts. Plaintiffs offer no response to this point.

Accordingly, Count V is dismissed without prejudice and with leave to amend. If Plaintiffs choose to pursue relief for breach of contract in a further amended complaint, they should clearly identify each contract sued upon, plead their claims for breach of each contract in a separate count, and in each count specifically identify the contract provisions Plaintiffs claim were breached. While not technically required by the federal pleading rules, the Court suggests that attaching copies of each contract sued upon might provide needed clarity and focus.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED:**

1. "Defendant, Constance Bamberg's Motion to Dismiss Second Amended Complaint" (Doc. 100) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

2. "Defendant, Noah's Ark of Central Florida, Inc.'s Motion to Dismiss Second Amended Complaint" (Doc. 101) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.
3. "Defendant, Villages at Noah's Landing, Ltd.'s Motion to Dismiss Second Amended Complaint" (Doc. 102) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.
4. "Defendant Royal American Management, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint" (Doc. 103) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.
5. Count I of the "Second Amended Class Action Complaint and Demand for Jury Trial" (Doc. 93) is **DISMISSED WITH PREJUDICE**. Count V is **DISMISSED WITHOUT PREJUDICE**, with leave to amend. Defendants' motions to dismiss are otherwise **DENIED**.
6. Plaintiffs are directed to file an amended complaint on or before September 28, 2026. Even if Plaintiffs do not intend to replead any dismissed claims, Plaintiffs shall file an amended complaint omitting the dismissed claims and identifying the claims that remain so that there is a single operative pleading. Failure to

do so will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 5th day of September, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE